# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

| | |
|---|---|
| 60 East 42nd Street, Suite 4510 | Telephone: (212) 317-1200 |
| New York, New York 10165 | Facsimile: (212) 317-1620 |

September 5, 2018

**VIA ECF**

Hon. Katharine H. Parker
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

                                         **Re:**    *Alcocer, et al. v. BNP NY Foods, Inc., et al*
                                                      Case No. 17-cv-242

Your Honor:

       This office represents Plaintiffs Erick Francisco Alcocer Castro, Fabinler Humberto Merida (aka Ranberto), Gabriel Trinided Reyna, Ludwin Gabriel Arreaga Fuentes and Maurilio Roque ("Plaintiffs") in the above-referenced matter. We submit this letter, together with Defendants' counsel, to respectfully request that the Court approve the settlement reached between Plaintiffs and Defendants BNP NY Foods, Inc. (d/b/a Essen), Amici 519 LLC (d/b/a Essen), 100 Broad Street LLC (d/b/a Essen), Ten Westside Corp. (d/b/a Essen), John Byun, Chong Won Byun, William Byun, Myong Byun, Young Choi, Josephine Kim, K.C. Choi, and Angie Park ("Defendants" and together with Plaintiffs, the "Parties").

       The Parties have agreed to a negotiated Settlement Agreement (the "Agreement") after extensive settlement discussions. The proposed Agreement is attached hereto as **Exhibit A.** We therefore ask the Court to approve the settlement, pursuant to <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d 199 (2d Cir. 2015).

       The Parties represent to the Court that while the Plaintiffs believe that the settlement amount is less than what they would be entitled to if they prevailed at trial, that the settlement is fair, as discussed herein.

**Background**

       Plaintiffs were employed by Defendants to work at four restaurants located at 290 Madison Avenue, New York, New York 10017 (hereinafter, the "Madison Avenue Location"), 519 Eighth Avenue, New York, New York 10018 (hereinafter, the "Eighth Avenue Location"), 160 Varick Street, New York, New York 10013 (hereinafter, the "Varick Street Location"), and 100 Broad Street, New York, New York 10004 (hereinafter, the "Broad Street Location")

       Plaintiff Erick Francisco Alcocer ("Plaintiff Francisco") was employed by Defendants as a cook and food preparer from approximately May 2015 until on or about July 2016, and from approximately September 25, 2016 until on or about January 4, 2017. From approximately May

Hon. Katharine H. Parker
September 4, 2018
Page 2 of 5

2015 until on or about July 2016, Plaintiff Francisco worked approximately 50 hours per week. From approximately September 25, 2016 until on or about September 30, 2016, Plaintiff Francisco worked approximately 50 hours per week. From approximately October 1, 2016 until on or about October 14, 2016, Plaintiff Francisco typically worked 70 to 77 hours per week. From approximately October 15, 2016 until on or about January 4, 2017, Plaintiff Francisco typically worked 60 hours per week. Throughout his employment, Plaintiff Francisco was paid his wages in cash. From approximately May 2015 until on or about May 2016, Defendants paid Plaintiff Francisco $100.00 per day. From approximately May 2016 until on or about June 2016, Plaintiff Francisco was paid a fixed salary of $110.00 per day. From approximately June 2016 until on or about July 2016, Plaintiff Francisco was paid a fixed salary of $100 per day. From approximately September 25, 2016 until on or about January 4, 2017, Plaintiff Francisco was paid a fixed salary of $120 per day.

Plaintiff Fabinler Humberto Merida (aka Ranbero) ("Plaintiff Humberto") was employed by Defendants as a salad preparer from approximately August 2016 until on or about December 16, 2016. From approximately August 2016 until on or about November 2, 2016, Plaintiff Humberto typically worked 60 hours per week. From approximately November 3, 2016 until on or about December 16, 2016, Plaintiff Humberto typically worked 50 hours per week. Throughout his employment, Plaintiff Humberto was paid his wages in cash. From approximately August 2016 until on or about November 2, 2016, Defendants paid Plaintiff Humberto was paid a fixed salary of $600 per week. From approximately November 3, 2016 until on or about December 16, 2016, Defendants paid Plaintiff Humberto a fixed salary of $500 per week.

Plaintiff Gabriel Trinidad Reyna ("Plaintiff Trinidad") was employed by Defendants as a cook from approximately February 20, 2013 until on or about January 4, 2017. From approximately February 20, 2013 until on or about April 2013, Plaintiff Trinidad typically worked 60 hours per week. From approximately April 2013 until on or about May 2013 Plaintiff Trinidad typically worked 78 hours per week. From approximately June 2013 until on or about October 2016, Plaintiff Trinidad typically worked 60 hours per week. From approximately October 2016 until on or about January 2017, Plaintiff Trinidad typically worked 48 hours per week. Throughout his employment, Plaintiff Trinidad was paid his wages in cash. From approximately February 20, 2013 until on or about April 2013, Plaintiff Trinidad was paid a fixed salary of $520 per week. From approximately April 2013 until on or about May 2014, Plaintiff Trinidad was paid a fixed salary of $550 per week. From approximately June 2014 until on or about May 20115, Plaintiff Trinidad was paid a fixed salary of $620 per week. From approximately January 2016 until on or about October 2016, Plaintiff Trinidad was paid a fixed salary of $750 per week. From approximately November 2016 until on or about January 2017, Plaintiff Trinidad was paid a fixed salary of $875 per week.

Plaintiff Ludwin Gabriel Arreaga Fuentes ("Plaintiff Gabriel") was employed by Defendants as a food preparer from approximately June 2015 until on or about January 4, 2017. From approximately June 2015 until on or about August 2016, Plaintiff Gabriel typically worked 50 to 51.25 hours per week. From approximately August 2016 until on or about January 4, 2017, Plaintiff Gabriel typically worked 60 to 61.5 hours per week. Throughout his employment, Plaintiff Gabriel was paid his wages in cash. From approximately June 2015 until on or about

Hon. Katharine H. Parker
September 4, 2018
Page 3 of 5

August 2015, Plaintiff Gabriel was paid a fixed salary of $90.00 per day. From approximately August 2015 until on or about October 2015, Plaintiff Gabriel was paid a fixed salary of $95 per day. From approximately October 2015 until on or about August 2016, Plaintiff Gabriel was paid a fixed salary of $100 per day. From approximately August 2016 until on or about January 4, 2017, Plaintiff Gabriel was paid a fixed salary of $104 per day.

Plaintiff Maurilio Roque ("Plaintiff Roque") was employed by Defendants as a cook from approximately June 2016 until on or about January 4, 2017. From approximately April 2015 until on or about September 2016, Plaintiff Roque typically worked 50 hours per week. From approximately September 2016 until on or about January 4, 2016, Plaintiff Roque typically worked 59 hours per week. Throughout his employment, Plaintiff Roque was paid his wages in cash. From approximately April 2015 until on or about September 2016, Defendants paid Plaintiff Roque $500 per week. From approximately October 2016 until on or about January 4, 2017, Defendants paid Plaintiff Roque a fixed weekly salary of $780 per week.

Plaintiffs therefore brought this action seeking to recover unpaid minimum and overtime wages, spread of hours, liquidated damages, interest, attorneys' fees, and costs, pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the New York Minimum Wage Act, N.Y. Lab. Law §§ 650, *et seq.*, and overtime wage orders of the New York Commission of Labor codified at N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6.

Defendants deny Plaintiffs' allegations and have produced documents that they allege prove that Plaintiffs were paid in accordance with the law. After weighing the risks of trial and costs of further litigation, the Parties have reached an agreement.

**Settlement**

The Parties have agreed to resolve this action for the total sum of $225,000.00 which will be paid as outlined in **Exhibit A**. Plaintiffs estimated that, in a best case scenario, they would be entitled to approximately $163,000.00 in minimum and overtime base damages. However, if Defendants were to succeed in proving that Plaintiffs were paid in accordance with the law, they estimate that the Plaintiffs would be entitled much less, if anything at all.

One-Hundred and Fifty Thousand Dollars ($150,000.00) of the settlement amount will be paid to the Plaintiffs. The remaining Seventy-Thousand-Five Dollars ($75,000.00) will be applied as attorneys' fees and costs.

There is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." Lliguichuzhca v. Cinema 60, LLC, 948 F.Supp.2d 362, 365 (S.D.N.Y. 2013) (*quoting* Crabtree v. Volkert, Inc., 2013 WL 593500, at *3 (S.D.Ala. Feb. 14, 2013)). "In considering whether a settlement is fair and reasonable, the principal question is 'whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Id.* (*quoting* Le v. SITA Info. Networking Computing USA, Inc., 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008)). Courts consider factors

Hon. Katharine H. Parker
September 4, 2018
Page 4 of 5

including "(1) the Plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." Wolinsky, 900 F.Supp.2d at 225 (*quoting* Medley v. Am. Cancer Soc., No. 10-cv-3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).

The agreement here is fair to the Plaintiffs. Plaintiffs have been represented by counsel throughout this lawsuit and have made an informed decision to settle the action, without incurring the costs or encumbrance of lengthy trial. The Two-Hundred and Twenty-Five Thousand dollars ($225,000.00) that they will be receiving accounts for any alleged unpaid minimum and overtime wages that they could have potentially recovered at trial, as well as attorneys' fees. This recovery is also well over what the Plaintiffs would recover if Defendants were to successfully use their records to establish that Plaintiffs were paid in accordance with the law. Furthermore, the Agreement is the product of arm's-length bargaining between experienced counsel and there is no possibility of fraud or collusion.

### **The Plaintiffs' Attorneys' Fees are Fair and Reasonable**

Under the settlement, Plaintiffs' counsel will receive $75,000 from the settlement fund as attorneys' fees and costs. This represents one-third of the Settlement amount, a reduction in fees from what is identified in the Plaintiffs' retainer agreement, which provides that forty percent of the Plaintiffs' recovery will be retained by the firm.

The amount provided to the Plaintiffs' counsel under the settlement is fair and reasonable as it is consistent with the range of fees typically awarded in cases in this Circuit. *See* Castaneda v. My Belly's Playlist LLC, No. 15 Civ. 1324 (JCF) (S.D.N.Y. Aug. 17, 2015) (Francis, M.J.) (awarding the plaintiffs' attorneys a contingency fee of one-third to account for risks in litigation); *see also* Calle v. Elite Specialty Coatings Plus, Inc., 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit"). In light of the nature of the issues herein, and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiffs' requested award is reasonable. *See* Alleyne v. Time Moving & Storage Inc., 264 F.R.D. at 60; *see also* McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010).

Given the Plaintiffs' counsel's significant experience representing plaintiffs in New York City in wage and hour litigation, the Plaintiffs' counsel was able to obtain a favorable pre-trial result due to the Parties' cooperative exchange of information and frequent negotiations.

Attached hereto as **Exhibit B**, are the Plaintiffs' attorneys' time records. A brief biography of each attorney who performed billed work in this matter is as follows:

- Mr. Faillace is the Managing Member of Michael Faillace & Associates, P.C, and has been in practice since 1983. From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM). Mr. Faillace taught

    employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and is a nationally-renowned speaker and writer on employment law. He also is the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations.

- Sara Isaacson is an associate at Michael Faillace & Associates, P.C. She graduated from Benjamin N. Cardozo School of Law in 2015. During law school, Ms. Isaacson worked as a law clerk at the employment firm of Virginia & Ambinder, LLP. After graduating law school, Ms. Isaacson worked at a commercial litigation firm which also specialized in the defense of wage and hour litigation. Since joining Michael Faillace & Associates, P.C. in May 2017, she has been responsible for all aspects of the firm's employment docket in federal court.

The requested attorneys' fees and costs in the parties' settlement are reasonable under the circumstances and the Plaintiffs have agreed to these fees and costs by agreeing to the settlement amount. As a result, the fees should be approved.

**Conclusion**

Plaintiffs have been represented by counsel throughout this lawsuit, and Plaintiffs' counsel has agreed to the settlement amount based on the approval of their clients. Plaintiffs' interests have thus been adequately safeguarded.

In full consideration of the issues presented in *Cheeks,* we believe that the parties' agreement is fair and reasonable, and that the settlement should be approved. A Stipulation of Final Dismissal will be filed for so-ordering after execution of the agreement and upon receipt of confirmation from the Court that the settlement has been approved.

Thank you for your consideration in this matter.

            Respectfully Submitted,

            /s/ Michael Faillace
            Michael Faillace, Esq.
            Michael Faillace & Associates, P.C.
            *Attorneys for Plaintiffs*

cc: Jonathan Sue, Esq. (via ECF)
   Nick Stevens, Esq. (via Electronic Mail)
   *Attorney for Defendants*